**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER LYNN MORAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:25-CV-01044 HEA |
| ) | |
| MATTHEW LAWLER, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the motion of Plaintiff for leave to commence this civil action without prepaying fees or costs. [ECF No. 2]. The Court will grant Plaintiff's motion and assess an initial partial filing fee of $1.00. Furthermore, after reviewing the pleadings in this matter, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a certified prison account statement. As a result, the Court will require Plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If Plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his certified prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court

should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

On October 14, 2024, the State of Tennessee filed a criminal complaint charging Plaintiff Christopher Lynn Moran with two counts of filing a false police report and one count of making a 911 call in a non-emergency situation. *State of Tennessee v. Moran*, No. 24CR282 (Dyer County Court). Plaintiff plead guilty to one count of filing a false police report on April 15, 2025. He was sentenced to three (3) years of incarceration.[1] *See Moran v. Box*, No. 1:25-CV-01153-STA-jay (W.D. TN. June 23, 2025). He is currently incarcerated in the Dyer County Workhouse in Dyersburg, Tennessee.

The facts related to the Tennessee charges are as follows, as gathered from the Affidavit of Complaint, filed in Case No. 24CR282:

> Occurring in the city of Dyersburg, Dyer County, the above defendant Christopher Moran, did commit the offense of TCA 39-16-502 Filing False Report. On the above date, the defendant did knowingly and intentionally initiate a 911 call stating his home was being burglarized and two suspects were in his kitchen. Upon investigation it was determined there was no emergency and a burglary had not occurred. Moran provided video showing there was no crime committed. Therefore, the defendant was charged with TCA 39-16-502 Filing False Report.

---

[1] Plaintiff states in his Tennessee habeas action that he received three years incarceration because while he was out on bond awaiting trial in his criminal case he was "charged with a domestic." There is no indication that this is true.

3

**The Complaint**

On July 16, 2025, Plaintiff Christopher Moran filed a pro se civil Complaint in this Court alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. [ECF No. 1]. Plaintiff, who is currently incarcerated in the Dyer County Workhouse in Dyersburg, Tennessee, alleges violations of his constitutional rights against two private individuals from St. Louis,[2] as well as Dyer County Prosecutor, Megan Fowler.

Plaintiff's Complaint is somewhat difficult to understand. He makes conclusory allegations against Defendants, at times, bordering on the nonsensical and delusional. For example. Plaintiff claims in his Complaint the following:

> In 2019 I [was] introduced [to] my wife (then girlfriend) by Matthew Lawler. They became involved. When we moved to Naylor MO from St. Louis MO he hired Greg Davis a GD boss who allegedly does Murder for Hire to kill me. At the time this was about to happen (it came within an hour) they realized they knew me and stopped.
>
> I went to FBI Memphis to talk to an agent in front of my wife and on camera I told them I would tell them what happened if they agreed to give everyone involved immunity except Mark & Matthew Lawler. They agreed and my wife immediately asked for an attorney. I believe she knew what was going on but is scared of Matthew Lawler.
>
> About a year later when I went to court in St. Louis Co. me my wife Andrea Marino Moran and Matthew Lawler went riding around St. Louis.
>
> He kept making comments to me that if he made the HAMC that I was talking about stuff U.S. Treasury alleges I did with them they would kill me. He made several references to ongoing criminal cases and asking me the identity of the federal agent who told me the only way to get away from these two brothers and keep my wife safe was to get a gun and kill both. At the time and a couple [] later he offered my wife (wit-sec) witness protection program if I would testify.

---

[2]Although Plaintiff states in the caption of his Complaint that Defendants Matthew Lawler and Mark Lawler are agents of the U.S. Treasury, it appears from the facts alleged in his Complaint that these individuals are merely private citizens.

> The information he could only obtain from Mark Lawler. Matthew Lawler is a convicted felon. Prime suspect in unsolved homicide in Oregon and a suspicious suicide in StL.

Plaintiff goes on to state in his Complaint that "Matthew has a habit of calling local jurisdictions pretending he's a federal agent." Plaintiff claims that he notified St. Louis County of Lawler's habit of doing so several months ago.

Additionally, Plaintiff refers to his recent arrest in Dyersburg, Tennessee, in his Complaint wherein he was charged with two counts of filing a false police report and one count of making a 911 call in a non-emergency situation. In that case, Plaintiff apparently told officers, in early February of 2024, that he and his wife, Andrea Moran, had been at the public library when he received a notification from a camera at the kitchen door of his apartment indicating someone was in his home. *See Moran v. Box*, No. 1:25-CV-01153-STA-jay (W.D. TN. June 23, 2025). He then used the library phone to call 911. Plaintiff alleges in the habeas corpus he filed in relation to that case that because the library manager was yelling at him to get off the phone, he failed to notice that three men had previously tried to break in hours before that, but had been unable to get in.

In the present Complaint he alleges that at the time he made the report to police, he was high, was being yelled at by police, had been disrespected by a library manager for using the phone and despite this, he later passed a polygraph in relation to the case. As noted above, he pled guilty to one count of making a 911 call in a non-emergency situation.

For relief in this action Plaintiff seeks monetary damages, the resignation of Megan Fowler, the Tennessee State Prosecutor in his state criminal action, and "investigation by FBI-STL."

5

**Discussion**

The Court has reviewed the Complaint and the Court record and finds that Plaintiff's claims in this lawsuit are subject to dismissal.

First, plaintiff's allegations relating to Matthew and Mark Lawler and nonsensical and appear delusional. He states that his wife was having an affair with Matthew Lawler, who he first identifies as a U.S. Treasury Agent, but later in his Complaint he states that this individual is a convicted felon, a prime suspect in an unsolved homicide in Oregon, a "suspicious suicide in StL" and has a habit of pretending to be a federal agent.

Plaintiff also states that Mark Lawler's brother, Matthew Lawler, engaged in a Murder for Hire scheme with his brother to kill Plaintiff. Nonetheless, rather than report the scheme to law enforcement in Missouri, Plaintiff purportedly drove to meet with the FBI in Memphis, Tennessee, and then after nothing occurred, he decided to ride around in a car with Matthew Lawler and his wife, in St. Louis, Missouri, approximately one year later.

Although the Court is to construe Plaintiff's Complaint liberally on initial review, Plaintiff's Complaint does not contain any well-pleaded facts that demonstrate any plausible claims for relief against these two Defendants. Rather, the Court finds that Plaintiff's allegations are delusional and "rise to the level of the irrational or wholly incredible." *Denton*, 504 U.S. at 33. The Court therefore deems Plaintiff's claims against these two Defendants as "frivolous" because they "lack[] an arguable basis … in law or in fact." *Neitzke*, 490 U.S. at 325. Because the Court finds that Plaintiff's claims against Mark and Matthew Lawler lack an arguable basis in either law or fact and the allegations are clearly baseless, it will dismiss Plaintiff's claims against these two Defendants.

Additionally, Plaintiff has failed to state a claim for relief against Megan Fowler, the Tennessee State Prosecutor who allegedly prosecuted his criminal case. Not only has he failed to provide any allegations in his Complaint against Defendant Fowler, but she is also entitled to absolute immunity relating to her prosecutorial actions against Plaintiff. *See Sample v. City of Woodbury,* 836 F.3d 913, 916 (8th Cir. 2016) ("Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process."); *see also Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government."). As such, the Court will also dismiss Plaintiff's claims against Defendant Fowler.

## Conclusion

Having thoroughly reviewed and liberally construed the Complaint, the Court concludes that it is subject to dismissal for the reasons mentioned above. The Court can envision no amendment to the Complaint that would cause it to state a plausible claim for relief. The Court will therefore dismiss this action at this time, without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

7

**IT IS FURTHER ORDERED** that that this case is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that an appeal of this action would not be taken in good faith.

A separate Order of Dismissal shall accompany this Opinion, Memorandum and Order.

Dated this 6th day of February, 2026.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE